UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE:      COLIN C. CONNELLY,<br>              Debtor. | Case No. 08-31777-KRH<br>Chapter 7 |
| HARRY SHAIA, JR., Trustee for the<br>Bankruptcy Estate of Colin C. Connelly,<br><br>              Plaintiff,<br><br>v.<br><br>J. BRIAN TAYLOR and<br>MARK G. TAYLOR,<br><br>              Defendants. | <br><br><br><br><br><br>APN 11-03315-KRH |

## MEMORANDUM OPINION

The issue before the Court is whether this adversary proceeding (the "Adversary Proceeding") is a core proceeding under 28 U.S.C. § 157(b)(2) in which the Court has the constitutional authority to issue a final order adjudicating the rights of the parties. A hearing was held on February 28, 2012, at which the Plaintiff and the Defendants agreed to forego oral argument on the issue and to submit the matter to the Court based upon the parties' pleadings and memoranda of law. The Court thereupon took the matter under advisement. For the reasons set forth herein, the Court concludes that the Adversary Proceeding is a core proceeding in which the Court may enter a final judgment.[1]

---

[1] The court is required to determine whether a proceeding is a core proceeding under § 157(b)(2) or a non-core proceeding that is otherwise related to a case under Title 11 on its own motion or on a motion of a party. 28 U.S.C. § 157(b)(3). This Memorandum Opinion shall not be construed as findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7052(a)(3).

1

**Facts and Procedural Posture**

Colin C. Connelly (the "Debtor") commenced this bankruptcy case by filing a petition under Chapter 11 of the United States Bankruptcy Code[2] on April 21, 2008 (the "Petition Date"). The Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code on February 19, 2009.  Harry Shaia, Jr. was appointed as the Chapter 7 trustee (the "Trustee"). On December 29, 2011, the Trustee initiated this Adversary Proceeding by filing a complaint under § 542 of the Bankruptcy Code seeking to recover payment of a promissory note dated December 6, 2007, made payable to bearer by J. Brian Taylor and Mark G. Taylor (the "Taylors" or the "Defendants") in the original principal amount of $187,066.68 (the "Taylor Note").  The Defendants filed an answer to the Trustee's complaint on January 30, 2012 (the "Answer"), wherein they deny that the Defendants are indebted to the Debtor and assert nine affirmative defenses challenging the validity and enforceability of the Taylor Note.  The Answer also asserts that the Trustee's claim is not a core proceeding under 28 U.S.C. § 157(b)(2) and that the Court is not permitted to enter final judgment against the Defendants in this matter.

The Defendants have been active participants in the Debtor's bankruptcy case.  Shortly after the Petition Date, the Defendants obtained an order authorizing them to conduct an examination of the Debtor under Rule 2004 of the Federal Rules of Bankruptcy Procedure.  The Defendants filed a Motion to Extend Tme to File Complaint for Determination of Dischargeability of Debt.  In August of 2008, each of the Defendants filed a proof of claim against the bankruptcy estate.

On September 11, 2008, the Defendants jointly filed Adversary Proceeding No. 08-03118 wherein they objected to the dischargeability of debts owed to them by the Debtor (the "2008 Adversary Proceeding").  The complaint in the 2008 Adversary Proceeding alleged that the

---

[2] 11 U.S.C. § 101 *et seq.* (hereinafter the "Bankruptcy Code").

Defendants and the Debtor were the members a Virginia limited liability company established in 2004 known as TaCon, LLC ("TaCon). TaCon owned a 123-acre parcel of real property in Prince George County, Virginia (the "Property"). The Property was under contract for sale to a third party, however zoning issues had held up closing on the sale. On December 6, 2007, the Debtor individually executed a promissory note with Bank of Virginia for $690,000 (the "BOV Loan"). The Defendants had agreed to allow the Debtor to use his share of the proceeds from the pending sale of the Property as security for the BOV Loan. Accordingly, TaCon granted Bank of Virginia a deed of trust lien on its Property.[3] The complaint in the 2008 Adversary Proceeding questioned whether the anticipated sales proceeds from the sale of the Property would be sufficient to satisfy the deed of trust in favor of Bank of Virginia. The Debtor had made loan payments to Bank of Virginia in January, February, and March of 2008, but he failed to make any payments thereafter. Consequently, the payoff amount on the BOV Loan began to increase significantly. The complaint in the 2008 Adversary Proceeding sought to have the Defendants' losses resulting from the Debtor's failure to pay the BOV Loan declared nondischargeable.

The Debtor and the Defendants entered into a consent order resolving the 2008 Adversary Proceeding on April 28, 2009 (the "Consent Order").[4] The Consent Order provided that the Defendants' claims against the Debtor would be nondischargeable. It also established a seven-step formula for determining the amount of the Defendants' nondischargeable claims. The first step required a calculation of net proceeds received by TaCon from the sale of its Property. The third step of the formula called for the payoff of the Taylor Note to be subtracted from the

---

[3] In order to compensate the Debtor for the portion of the BOV Loan that was used to pay off the Defendants' share of the original acquisition financing for the Property, the Defendants signed and delivered to the Debtor the Taylor Note.

[4] The Debtor's case had been converted to Chapter 7 and the Trustee had been appointed approximately two months prior to the resolution of the 2008 Adversary Proceeding. Neither the bankruptcy estate nor the Trustee was a party to the 2008 Adversary proceeding. Resolution of that proceeding did not affect property of the Debtor's bankruptcy estate nor did it establish or allow any claim against the bankruptcy estate.

Defendants' share of the net proceeds calculated in step one. The fifth step of the formula called for "the amounts of the [Taylor Note] and any unpaid interest and late fees owed under that note, which the U. S. Bankruptcy Court and/or the Chapter 7 trustee do not permit to be applied to pay the [BOV Loan] . . . at the time of the closing of the actual sale of the TaCon Property to any purchaser" to be added to the running total of the claim calculation.

The Defendants filed amended proofs of claim in the bankruptcy case in June 2009, following entry of the Consent Order in the 2008 Adversary Proceeding. The Defendants seek recovery against the bankruptcy estate for the amount of their nondischargeable claims. Meanwhile, the Trustee commenced this Adversary Proceeding to enforce the Taylor Note. The Defendants maintain that the proceeds of the Taylor Note should be used to pay the Bank of Virginia in order to reduce the indebtedness owed by the Debtor on the BOV Loan. In the alternative, the Defendants claim a right to setoff the unliquidated amount of the nondischargeable obligation described in their proofs of claim against their liability on the outstanding balance of the Taylor Note. Against this background, the Defendants argue that this Court lacks authority to enter a final order or judgment in this Adversary Proceeding.

## Discussion

Section 1334(a) of Title 28 of the United States Code provides that United States district courts have original and exclusive jurisdiction over all cases filed under Title 11 of the United States Code. 28 U.S.C. § 1334(a). District courts also have original but non-exclusive jurisdiction over all civil proceedings arising under Title 11[5], or arising in[6] or related to[7] cases

---

[5] Civil proceedings "arising under" Title 11 of the U.S. Code encompass claims created by Title 11, such as an avoidance claim under 11 U.S.C. § 544(b). *See, e.g., Carlton v. BAWW, Inc.*, 751 F.2d 781 (5th Cir. 1985). This is referred to as "arising under" jurisdiction.

[6] Civil proceedings "arising in" a case under title 11 of the U.S. Code pertain to matters that could only arise in a case under Title 11. *In re Wilborn,* 609 F.3d 748, 752 (5th Cir. 2010). This is referred to as "arising in" jurisdiction.

4

under Title 11. 28 U.S.C. § 1334(b). The Bankruptcy Amendments and Federal Judgeship Act of 1984 authorized district courts to refer any or all cases filed under Title 11, and any or all proceedings arising under Title 11, or arising in or related to a case under Title 11 to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The United States District Court for the Eastern District of Virginia exercised its authority under 28 U.S.C. § 157(a) to refer all such cases and proceedings to the bankruptcy judges of this district by its general order of reference dated August 15, 1984.

Section 157 of Title 28 of the United States Code allocates the jurisdiction conferred by 28 U.S.C. § 1334 between the district courts and the bankruptcy courts.[8] Under § 157(b)(1), bankruptcy judges have the authority to hear and determine, and to enter final orders and judgments, in all cases under Title 11 of the United States Code and all core proceedings arising under Title 11, or arising in a case under Title 11 which have been referred to them by the district court. Thus, under the statutory scheme, the bankruptcy court's authority to enter a final order depends on whether the issue at hand is a "core proceeding."

The term "core proceeding" is not defined in the statute. Section 157(b)(2) of Title 28 sets forth a nonexclusive list of sixteen core proceedings in which a bankruptcy judge may presumptively enter final orders and judgments.[9] Other proceedings may be "core" if they

---

[7] Civil proceeding relate to a Title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate. *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000). This is referred to as "related to" jurisdiction.

[8] The Supreme Court has explicitly established that § 157 is not a jurisdictional statute: "Section 157 allocates the authority to enter final judgments between the bankruptcy court and the district court. *See* §§ 157(b)(1), (c)(1). That authority does not implicate questions of subject matter jurisdiction." *Stern v. Marshall*, 131 S. Ct. 2594, 2607 (2011).

[9] 28 U.S.C. § 157(b)(2) states:

Core proceedings include, but are not limited to—
    (A) matters concerning the administration of the estate;

5

pertain to matters that "[arise] under title 11, or [arise] in a case under title 11 and which would have no existence outside of the bankruptcy case." *J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 937 (Bankr. S.D.N.Y 1991); *In re USDigital, Inc.*, 461 B.R. 276, 284-85 (Bankr. D. Del. 2011) (stating that a proceeding is core if (1) it is listed in § 157(b) or (2) the matter "invokes a substantive right provided by title 11" or "is a proceeding, that by its nature, could arise only in the context of a bankruptcy case") (citation omitted).

Bankruptcy judges may also hear non-core proceedings that are "otherwise related to a case under Title 11," but they may not decide them. 28 U.S.C. § 157(c)(1). A proceeding is related to a case under Title 11 if the outcome in the civil case could conceivably have any effect on the estate being administered in bankruptcy, or if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankrupt estate. *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)). Bankruptcy judges hearing non-core proceedings submit proposed findings of fact and conclusions of law to the

---

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

district court. 28 U.S.C. § 157(c)(1). Following a *de novo* review, the district court may enter final orders or judgments as appropriate. *Id.*

The Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011) has altered this statutory scheme. In *Stern*, the debtor, Vickie Marshall ("Vickie"),[10] had filed claims in the Texas probate court asserting rights to proceeds from the estate of her late husband before she commenced her bankruptcy case. Pierce Marshall ("Pierce"), who was the son of Vickie's husband and the sole heir to his father's estate, sued Vickie for defamation in the bankruptcy court. The complaint sought a determination that the defamation claim was not dischargeable in Vickie's bankruptcy case. Pierce also filed a proof of claim for damages under the defamation action. Vickie filed a counterclaim against Pierce based on Texas law for tortious interference with a prospective gift from her late husband.

The bankruptcy court found that it had the authority to hear and decide Vickie's counterclaim as a core proceeding under 28 U.S.C. § 157(b)(2)(C) as a "[counterclaim] by the estate against persons filing claims against the estate." After the bankruptcy court ruled in Vickie's favor, Pierce appealed in part on the grounds that the bankruptcy court lacked constitutional authority to decide Vickie's counterclaim regardless of whether it was listed as a core proceeding in § 157(b)(2)(C). *Stern*, 131 S. Ct. at 2601-03.

The Supreme Court held that whether a proceeding is core or non-core does not dispositively determine whether a bankruptcy court may decide and enter final orders or judgments in the proceeding. The Supreme Court found that, although Vickie's counterclaim was in fact listed as a core proceeding under § 157(b)(2)(C) and thus the bankruptcy court had statutory authority to enter a final judgment on the counterclaim, the bankruptcy court lacked the

---

[10] Vickie is better known as her stage name, Anna Nicole Smith. Although Vickie died during the pendency of the bankruptcy case, her estate continued to pursue the action.

7

constitutional authority to finally adjudicate the matter. The Supreme Court concluded that only Article III courts, whose judges have life tenure and whose salaries cannot be reduced, may enter a final judgment in a suit "made of the stuff of the traditional actions at common law." *Stern*, 131 S. Ct. at 2609 (quoting *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 102 S. Ct. 2858 (1982)).[11]  The Supreme Court established a two part test to determine whether a bankruptcy court has the Constitutional authority to issue a final judgment in core proceedings arising under § 157(b)(2)(C): "The question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618. Finding that Vickie's counterclaim failed to satisfy either part of this test, the Supreme Court concluded that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620.

After *Stern*, the authority of a bankruptcy court to enter a final judgment in a proceeding is subject to a two-part analysis. *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LL*, 462 B.R. 457, 463 (S.D.N.Y. 2011) ("[I]dentifying a claim as core or non-core under the bankruptcy law does not necessarily determine whether a bankruptcy court is constitutionally empowered to finally adjudicate the matter."). First, a bankruptcy court must determine whether the proceeding is core and, therefore, whether it has the statutory authority under 28 U.S.C. § 157 to finally adjudicate it. Second, if a bankruptcy court does in fact have the statutory authority to finally adjudicate the core proceeding, it must then determine whether it has the constitutional authority to enter such a final judgment. *In re USDigital, Inc.*, 461 B.R. 276, 284-85 (Bankr. D. Del. 2011).

---

[11] "The rationale is that the characteristics of Article III judges protect and insulate those judges to ensure an independent judicial branch." *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 2012 Bankr. LEXIS 41, at *15 (Bankr. D. Del. Jan. 12, 2012).

The complaint that initiated this Adversary Proceeding does not specify the specific subsection of 28 U.S.C. § 157(b)(2) that supports the assertion that this is a core proceeding. As the complaint is entitled "Complaint for Turnover" and as the complaint seeks to recover a debt owed to the estate pursuant to 11 U.S.C. § 542, the Defendants treated the complaint as asserting a core proceeding under 28 U.S.C. § 157(b)(2)(E) and lodged their objection. *See Dayton Title Agency, et al v. Philadelphia Indem. Ins. Co. (In re Dayton Title Agency, Inc.)*, 264 B.R. 880, 883 (Bankr. S.D. Ohio 2000) ("[T]he words 'to turn over property of the estate' [as used in 28 U.S.C. § 157(b)(2)(E)] are terms of art in the bankruptcy context meant to include proceedings brought pursuant to 11 U.S.C. § 542.").

To properly constitute a core proceeding under § 157(b)(2)(E), the debt must be "matured, payable on demand, or payable on order." 11 U.S.C. § 542(b). "Matured" refers to "debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event." *Smith v. McLeskey (In re Bay Vista of Va., Inc.)*, 394 B.R. 820, 837 (Bankr. E.D. Va. 2011) (quoting *Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725, 732 (Bankr. D. Md. 2004)). The Trustee alleges that the Taylor Note represents a matured obligation owed to the estate. The Taylor Note states on its face that the unpaid balance becomes due upon the sale of the Property or upon default on any payment or performance of any obligation due under the note. While the Defendants assert that they are not indebted to the Trustee, it is simply not relevant that the Defendants dispute liability on the instrument. *Nat'l Enters. v. Koger P'ship (In re Nat'l Enters., Inc.)*, 128 B.R. 956, 959 (E.D. Va. 1991). The presence of a dispute does not preclude a debt from being matured. It is sufficient if the complaint alleges the existence of a matured debt. *Id.* ("[F]or an action to be a turnover proceeding, it is not relevant that the defendant disputes the

9

existence of the debt by, perhaps, denying the complaint's allegations, as long as those allegations state the existence of a mature debt."). A cause of action is a turnover proceeding under § 542(b) of the Bankruptcy Code where it seeks the collection rather than creation or liquidation of a matured debt. The Court finds that the Trustee's attempt to enforce the Taylor Note qualifies as a turnover action under § 542(b). Consequently, the Adversary Proceeding is a core proceeding under §157(b)(2)(E).

The Adversary Proceeding additionally qualifies as a core proceeding under § 157(b)(2)(C) as a "counterclaim by the estate against persons filing claims against the estate." Although the Trustee's action against the Defendants was initiated by a complaint rather than by a traditional counterclaim, "such actions are in the nature of a counterclaim when asserted against parties who have filed proofs of claim in the bankruptcy case." *Fort v. SunTrust Bank (In re Int'l Payment Grp., Inc.)*, 2011 Bankr. LEXIS 4269, at *8 (Bankr. D.S.C. Nov. 3, 2011) (stating that the plaintiff's complaint constituted a counterclaim for the purposes of § 157(b)(2)(C) because the defendant had filed a proof of claim). *See also Kline v. Zueblin (In re American Export Group Int'l Servs.)*, 167 B.R. 311, 313 (Bankr. D.C. 1994) (holding that a proof of claim is analogous to a complaint filed in the District Court, and thus that a "proof of claim is properly viewed as a complaint and the debtor's adversary proceeding as a counterclaim to that complaint"). Here, the Defendants have filed proofs of claim against the estate. The instant Adversary Proceeding therefore constitutes a counterclaim against the Defendants and is a core proceeding under § 157(b)(2)(C).

The Adversary Proceeding also qualifies as a core proceeding under § 157(b)(2)(B) as a matter concerning the "allowance or disallowance of claims against the estate." The Taylor Note is an essential component in the formula for determining the amount of the Defendants' claims

10

against the estate. The proofs of claim filed by the Defendants state that the amount of the asserted claims is "unknown at this time" because the extent of the Defendants' liability on the Taylor Note is in dispute. The liquidation of the claims asserted by the Defendants is dependent upon the resolution of the Adversary Proceeding. Until the Defendants' liability under the Taylor Note has been established, the Trustee cannot possibly ascertain the amount of any claims held by the Defendants that should be allowed against the estate.

This in turn implicates § 157(b)(2)(A) as a matter "concerning the administration of the estate" because the Trustee cannot properly and effectively administer the bankruptcy estate without a resolution of these issues. Resolution of the dispute over the Defendants' liability on the Taylor Note and the resulting certainty regarding the extent of the Defendants' claims against the estate will also affect the liquidation of the assets of the estate and adjust the debtor-creditor relationship under § 157(b)(2)(O).[12] Accordingly, the Court finds that, in addition to qualifying under 28 U.S.C. §§ 157(b)(2)(B), (C) and (E), the Adversary Proceeding also qualifies as a core proceeding under 28 U.S.C §§ 157(b)(2)(A) and (O). The Court concludes that it has the statutory authority under 11 U.S.C § 157(b) to finally adjudicate this matter.

The Court must next consider whether it has the Constitutional authority to enter final orders and judgments in this Adversary Proceeding, subject to review under 11 U.S.C § 158. *Stern* was, by its own express language, intended to be narrowly construed.[13] Chief Justice Roberts, writing for the majority, repeatedly emphasized the limited impact of the decision and

---

[12] The Adversary Proceeding does not seek merely to augment the estate. *See, e.g. Dev. Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Bros. LLP)*, 2011 U.S. Dist. LEXIS 135990, at *13 (S.D.N.Y Nov. 23, 2011) ("[P]roceedings are not rendered core simply because they may involve property of the estate which one day may be used to satisfy creditors."). The Adversary Proceeding seeks to recover property of the estate under § 542(b) of the Bankruptcy Code and also serves to liquidate Defendants' claims against the bankruptcy estate. Resolution of the Adversary Proceeding in this case invokes substantive rights provided by the Bankruptcy Code and is essential to the administration of the underlying bankruptcy case.

[13] Had the Supreme Court intended for its holding to be broadly interpreted, it would have said so.

stressed the narrow nature of the holding. The Court summarized its ruling by concluding "that Congress, *in one isolated respect*, exceeded [its constitutional limitations] in the Bankruptcy Act of 1984." *Stern*, 131 S. Ct. at 2620 (emphasis added). The Court then held that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a *final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim*." *Id.* (emphasis added). Given the deliberate efforts to limit the impact of *Stern* and the numerous qualifiers in the holding, this Court will not expand the reach of *Stern* beyond that intended by the Supreme Court. *Accord In re USDigital, Inc.*, 461 B.R. 276, 291 (Bankr. D. Del. 2011) ("[H]ad the Supreme Court believed its opinion would render delineating as core all state law claims as unconstitutional it would not have characterized the infraction as 'slight,' 'chipping away at the authority of the Judicial Branch,' or 'obnoxious in its mildest and least repulsive form.'"); *In re Salander O'Reilly Galleries*, 453 B.R. 106, 115-18 (Bankr. S.D.N.Y. July 18, 2011) (stating that Stern "should be limited to the unique circumstances of that case" and "does not remove from the bankruptcy court its jurisdiction over matters directly related to the estate that can be finally decided in connection with restructuring debtor and creditor relations"). *Stern* only affects a bankruptcy court's constitutional authority to enter final judgments in a discrete subset of core proceedings that are based entirely upon state law issues that will not necessarily be resolved in restructuring debtor-creditor relations in connection with the administration of a bankruptcy case.[14] *See Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*,

---

[14] The Court recognizes that some courts have taken a more expansive view of the impact of *Stern*. These courts view *Stern* as stripping bankruptcy courts of the authority to enter final judgments in proceedings where the debtor seeks to augment the estate, as such proceedings are legal actions that seek to take the property of another and are therefore akin to "traditional actions at common law." For a thorough analysis of this broad interpretation of *Stern*, *see Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 2012 Bankr. LEXIS 41, at *17-26 (Bankr. D. Del. Jan. 12, 2012). This Court disagrees with that broad interpretation of the *Stern* decision for the same reasons as that broad interpretation was rejected by the court in *Burtch*. The Supreme Court did not hold in *Stern* that the restructuring of the debtor-creditor relationship was not a public right. Until such time as the Supreme Court rules

2012 Bankr. LEXIS 41, at *17-26 (Bankr. D. Del. Jan. 12, 2012) *(citing In re Salander O'Reilly Galleries,* 453 B.R. 106, 115-18 (Bankr. S.D.N.Y. 2011)); *In re Safety Harbor Resort and Spa,* 456 B.R. 703, 708 (Bankr. M.D. Fla. 2011) (holding that *Stern* does not preclude bankruptcy courts from adjudicating core claims, but rather that it is a "narrow" holding that Congress exceeded the limits of Article III in "one isolated respect"); *In re Olde Prairie Block Owner, LLC,* 457 B.R. 692, 698 (Bankr. N.D. Ill. 2011) (*Stern* has a "narrow effect"); *In re USDigital, Inc.*, 461 B.R. 276, 290 (Bankr. D. Del. 2011) ("It is simply incredulous to conclude that the Supreme Court contemplated that its holding would transform all state common law claims from core under the statute to non-core under the Constitution while stating that its ruling would not meaningfully change the division of labor in the current statute."). This Adversary Proceeding seeks turnover of estate property under § 542(b) of the Bankruptcy Code which is a core proceeding under 28 U.S.C. § 157(b)(2)(E). Neither of these provisions was impacted by the Supreme Court's narrow holding in *Stern*.

The critical factor in *Stern* that prevented the bankruptcy court from entering a final order or judgment was the lack of a sufficient nexus between the counterclaim asserted by Vickie and the bankruptcy case. *See Stern*, 131 S. Ct. at 2611, 2617 ("Here Vickie's claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy. . . . In ruling on Vickie's counterclaim, the Bankruptcy Court was required to and did make several factual and legal determinations that were not 'disposed of in passing on objections' to Pierce's proof of claim for defamation, which the court had denied almost a year earlier."). The Supreme Court recognized this distinction in its two-prong test to determine whether a bankruptcy court has Constitutional authority to issue a

---

otherwise, bankruptcy courts retain the constitutional authority to adjudicate such restructuring issues in the context of a bankruptcy case.

final judgment in a core proceeding under 28 U.S.C. § 157(b)(2)(C), stating that "[t]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618.

While this Adversary Proceeding does not stem from the bankruptcy itself, it must necessarily be resolved in the process of allowing the Defendants' proofs of claim. The amount stated in each of the Defendants' proof of claim is currently listed as "unknown at this time" because the claims are asserted as a right of setoff against the Defendants' liability on the Taylor Note. Until the dispute over the Defendants' liability on the Taylor Note has been resolved, the amount of Defendants' allowed claims (if any) cannot be determined. This Adversary Proceeding falls squarely within the second prong of the test set forth in *Stern* for counterclaims brought under 28 U.S.C. § 157(b)(2)(C). The Court, therefore, has the constitutional authority in addition to the statutory authority to adjudicate this matter and to enter a final decision in this Adversary Proceeding.

The Court also has the authority to enter a final decision in this Adversary Proceeding because the Defendants have consented to the Court's authority to do so. The Supreme Court has long recognized that parties can consent to be bound by a decision of a court that may otherwise lack constitutional authority to enter a final judgment. *See, e.g., Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848-49 (1986) ("[A]s a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver, just as are other personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried."). This ability of parties to consent to adjudication by a non-Article III tribunal was explicitly recognized in *Stern*:

> [The allocation of] authority to enter final judgment between the bankruptcy court and the district court . . . does not implicate questions of subject matter

14

> jurisdiction. See § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in non-core case). By the same token, § 157(b)(5) simply specifies where a particular category of cases should be tried. Pierce does not explain why that statutory limitation may not be similarly waived.

*Stern*, 131 S. Ct. at 2607. Stern further recognized that such consent can be express or implied. Although the Court held that the bankruptcy court did not have the authority to determine Vickie's unrelated state law counterclaim, it did hold that the bankruptcy court had the authority to adjudicate Pierce's state law claim for defamation because Pierce had impliedly consented. The Court found that by filing his proof of claim in the bankruptcy court and failing to timely contest the court's authority, Pierce consented to the resolution of that claim and the underlying defamation action. *Stern*, 131 S. Ct. at 2608 ("[W]e conclude that he consented to that court's resolution of his defamation claim (and forfeited any argument to the contrary). . . . If Pierce believed that the Bankruptcy Court lacked the authority to decide his claim for defamation, then he should have said so—and said so promptly.").

In this case, the Defendants filed proofs of claim seeking $10,000 in damages resulting from the Debtor's failure to pay the BOV Loan and asserting a right of setoff against any sums owed to the estate under the terms of the Taylor Note. Much like Pierce, the Defendants have consented to the resolution of these claims by this Court, including any state law issues that must be resolved in the process of adjudicating the Defendants' claims. *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 470 (S.D.N.Y 2011) ("Pierce consented to have the Bankruptcy Court finally adjudicate not only the defamation claim, but all issues – state law or otherwise – that necessarily would be resolved in ruling on the defamation claim.") (discussing *Stern*). As a resolution of the dispute concerning the Defendants' liability on the Taylor Note is necessary to adjudicate the Defendants' proofs of claim, the Defendants impliedly

consented to the resolution of the Adversary Proceeding by filing their claims. Accordingly, the Court may properly hear and determine the Adversary Proceeding under 28 U.S.C. § 157(b)(1).

In the event that the Court's holding concerning its ability to finally adjudicate this Adversary Proceeding may be overturned on appeal, the Court intends that any judgments or orders entered in the Adversary Proceeding be treated as findings of fact and conclusions of law subject to *de novo* review and entry of a final order or judgment by the district court. Section 157(b)(1) permits bankruptcy judges to "hear and determine" all cases and core proceedings arising under Title 11 and all core proceedings arising in a case under Title 11. The impact of *Stern* was to remove the bankruptcy court's ability to enter final orders and judgments in a limited subset of core proceedings, thereby severing only the authority granted by § 157(b)(1) to "determine" these core proceedings. *Stern* did not impact a bankruptcy court's ability to "hear" such proceedings.

While § 157(b)(1) does not specify a procedure by which a bankruptcy court can hear but not determine the affected subset of core proceedings, such a procedure is set forth in § 157(c)(1) regarding non-core proceedings that the bankruptcy court may hear but not finally adjudicate. Section 157(c)(1) gives bankruptcy courts the authority to hear proceedings that, while not core, are "related to a case under title 11." Pursuant to this section,

> the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

11 U.S.C. § 157(c)(1).

The procedures set forth in 28 U.S.C. § 157(c)(1) can be applied to the affected subset of core proceedings impacted by *Stern* so that a bankruptcy court may continue to hear such matters

16

but not decide them. Application of the procedures set forth in § 157(c)(1) in this regard will effectuate the intent of Congress entirely consistent with the Supreme Court's ruling in *Stern*. It accords with accepted principles of statutory interpretation by preserving as much of the authority of bankruptcy courts as is constitutionally permissible. In *Celotex Corp. v. Edwards*, 115 S. Ct. 1493 (1995), the Supreme Court stated that "We agree with the [view] . . . that 'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *Id.* at 1499 (citation omitted). *Stern* reiterated this intent to maximize the authority of bankruptcy courts: "We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a 'narrow' one." *Stern*, 131 S. Ct. at 2620. This approach serves to sever only that part of the statute that the Supreme Court found to be unconstitutional while retaining the remaining valid sections to the fullest extent possible. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (stating that a court should refrain from invalidating more of the statute than is necessary and that "[w]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid") (citations omitted).

      Therefore, to the extent that it is determined that this Court may not enter final orders or judgments in this Adversary Proceeding, any rulings or other disposition the Court may make shall be deemed to be proposed findings of fact and conclusions of law subject to *de novo* review and entry of a final order by the district court as set forth in § 157(c)(1). *Accord McCarthy v. Wells Fargo Bank N.A.,* 2011 U.S. Dist. LEXIS 133423 (E.D. Va. Nov. 18, 2011).

**Conclusion**

The Court concludes that it may appropriately enter final orders and judgments in this Adversary Proceeding. The Adversary Proceeding meets both parts of the *Stern* analysis. The Court has the statutory authority to hear and determine the Adversary Proceeding. It is a core proceeding under §§ 157(b)(2)(A), (B), (C), (E) and (O). The Court also has the constitutional authority to enter final orders and judgments in this proceeding. First, this Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(E) for turnover of estate property authorized by § 542 of the Bankruptcy Code, which is not impacted by the Supreme Court's narrow holding in *Stern*. Second, the resolution of the Adversary Proceeding is necessary for the proper administration of the bankruptcy estate. It is an essential component of the adjudication of the Defendants' proofs of claim and thus falls clearly within the second prong of the test set forth in *Stern* for counterclaims brought under 28 U.S.C. § 157(b)(2)(C). Additionally, the Court has authority to enter final judgments and orders in this Adversary Proceeding because the Defendants consented to the adjudication of their proofs of claim, including any necessary state law matters such as their liability under the Taylor Note at issue in the Adversary Proceeding. Should the holding of this Court be overturned on appeal, the Court intends that its disposition of this Adversary Proceeding be deemed to be proposed findings of fact and conclusions of law subject to the review and entry of final orders and judgments by the district court.

A separate order shall issue.

ENTERED: _____

       /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE